Good morning, ladies and gentlemen. Our first case for argument this morning is Rock River Health Care v. Eagleson. Ms. Watt. Good morning, your honors. May it please the court, Kimberly Watt with SB2 for plaintiff's appellants. We're here today because the department uses its MDS audit process to avoid transparency. The department retroactively slashes the direct care component and it refuses to allow a facility the opportunity to show that the audit results are erroneous, thus depriving the facilities of due process. I'd like to start by highlighting some of the allegations, which on a motion to dismiss are taken to be true. The facilities allege that they were not provided any notice of the allegedly missing or deficient documentation during the on-site audit. Yet, as the department concedes, this is a requirement prior to the end of the audit. The facilities allege they were not provided with preliminary conclusions. One of the things that puzzled me is that your only argument appears to be based on the Constitution. And yet, in your brief, as here, you've begun by contending that there was a violation of regulations and perhaps of the statute. Are you basing any claim on the statute and regulations? Your Honor, this court has previously broadly held that the Medicaid Act provides... Counsel? Yes, Your Honor. I want to repeat my question. I'm not asking about what the Seventh Circuit has held. I am asking about what you are arguing. Are you making any argument based on the statute and regulations? We are arguing that the Medicaid Act broadly provides property interest in reimbursement for services provided. The answer to my question is yes or no. Are you making a non-constitutional argument? Yes, Your Honor. We're arguing that the Medicaid Act provides property interest in... That just sets up your constitutional argument. Are you arguing that the defendants violated the Medicare Act or a regulation? I shouldn't have to be asking this three times. Your Honor, we're arguing that the defendants violated due process. Okay. And the answer is no. You are not making a statutory or regulatory claim. Let me see if I can figure this out with you. You argue in the brief that you were not allowed to provide further documentation on appeal. But were you able to argue on appeal that the audit teams failed to follow the proper procedures and failed to notify you of the alleged deficiencies as required? No, Your Honor, because again, that was information that was not in the original audit, and so that information was also excluded from the appeal. There's sworn testimony in the related case that supports the allegations made in this complaint. Moreover, by the time of the September 29th letter, the department was required by federal law to have paid the facilities. Due process demands notice and a meaningful opportunity to be heard, yet plaintiffs were deprived of notice of the deficiencies and the opportunity to be heard regarding those deficiencies. The department argues that there was ample time to provide the documentation during the audit, but this ignores that the facilities were not advised what documentation was deficient. It's not reasonable to expect the facilities to cure a defect that they were not informed of. The audits described in this complaint are merely three examples of the department's use of its unreasonable audit process. Let me stop you for a minute. You see, in the briefs, you're arguing as if the requirements of due process are commensurate with statutory or regulatory requirements, but that's not what the Constitution requires. In other words, the due process clause requires only notice and a meaningful opportunity to be heard. And here, Illinois law provides for notice of the basis for reduction in the reimbursement rate prior to the recalculation of the right. So, where are we? That notice was not provided. And because that notice was not provided, they were never given an opportunity to cure the alleged defects. The law requires... You were informed of the need for documentation as to each resident. And so, even absence, any deficiency notification, shouldn't you have been aware of the criteria that had to be met? And didn't you have the opportunity to provide documentation to meet that criteria? The facilities weren't notified what the deficiencies were until the September 29th letter. They were not provided the preliminary results during the audit as is required. They did not have notice of what is allegedly deficient. Your problem is that they lowered the reimbursement rates and you didn't get notice of that. You wouldn't be complaining if they were raised, for example. Isn't that correct? That is correct, Your Honor. We probably wouldn't be complaining if they were raised. However, I can't point to a facility's rate having been raised since I've been doing this. Yeah, all right. But you got raised rates, lower rates, without notice. I guess that's what you're saying. And an opportunity to prove that the auditor's conclusions were erroneous. As a result of these audits, the facility's rates were slashed, not just cut, not just lowered, slashed by 83%, by 57%, by 20%. One was from $97 down to $16. One was from $109 down to less than $47. Let me go back, please, because you've argued that you were not allowed to produce additional documentation on appeal. But that doesn't mean, I fear, that you were not allowed to argue that the process of recalculation violated the code and that it should be recalculated under the proper law. In other words, you haven't asserted that you couldn't raise the deficiencies in processing that appeal. So, if what I'm saying is true, the procedural due process claim can't succeed because the claim can't succeed on the merits. I don't think we have to address the Constitution, whether the 11th Amendment bars you from obtaining the remedy you're seeking here. Did you see where I am? Yes, Your Honor. I am? I would say that an amendment to the complaint, if that is a deficiency, that we didn't allege that we weren't allowed to bring an argument that the audit wasn't properly conducted. And I do believe that argument was made and not allowed. But, you know, if the complaint requires that we say that that argument wasn't allowed, then an amendment to the complaint should be in order. And regarding the 11th Circuit or the 11th Amendment deficiency, that's only one of the requests for relief in this case. The proper relief in that matter, if you determine that that particular request is outside of the bounds of the 11th Amendment, then the proper remedy is to strike that request and not dismiss the entire complaint. I want to note that the nursing component is not just a recalculated rate after the audit. Let's take an example of a rate where there was $100 posted rate. If the auditors come in and only find their support for $80 rate, the new rate isn't $80. The new rate is $62. That's a monetary penalty. And there's no floor. In the related case, one of the facilities' nursing component was reduced to zero for a three-month period. This nursing component pays for the wages and benefits of the licensed staff, the nursing staff, the CNAs, the LPNs, the social workers. And it also pays for all the medical supplies used for a resident for a 24-hour period. This isn't an hourly rate. This is a 24-hour period. Given that the rate to reimbursement is contingent by law on the verification of the qualification for that rate by audit or otherwise, how is it that you have a property interest in an unreduced reimbursement? Your Honor, that's not the question. I know that's the question that the department wants to focus on is do we have a right to a particular rate. But it's not whether we have a right to a particular rate. It's whether we have a right to reimbursement for services rendered, which we should. Several district courts have held there is a right to reimbursement for services rendered. By the time of the audit, the care has been provided, the medical products have been provided. It's not that we're saying we have a right to this $109, $147 rate. It's that we have a right to some reimbursement. And therefore, the process to determine what that reimbursement is should be adequate. The state should not be allowed to claw back $1 more than it can prove it's entitled to. I'd like to reserve the remainder of my time. Thank you. Certainly, Ms. Watt. Ms. Hanson. Ms. Hanson. You're on mute. I apologize. I was muted. I apologize. Good morning, and may it please the court. I'm Assistant Attorney General Christina Hanson on behalf of Defendant Appellee Teresa Eagleston. In her official capacity as Director of the Department of Health Care and Family Services. May I start you out, please? Because a due process requires notice and a meaningful opportunity to be heard. Assuming the due process clause is implicated here, how would the providers have noticed and an opportunity to be heard if they're not alerted to the deficiency before the ability to submit documentation is closed? I mean, wouldn't that be like providing an evidentiary hearing before alerting someone of the charges? They are provided notice and an opportunity to be heard. Because during the onsite review, the auditors conduct the onsite review. And during the audit review process, the facility is allowed to provide any and all documentation that it has supporting the MDS data that it submitted. The regulations provide that the facilities are required by law to maintain their records and the documentation supporting the MDS data that they submitted. And during the audit, they provide that documentation to the auditors while the auditors conduct the audit. And they're allowed to provide any and all documentation that they want to provide. After the audit is completed, the department auditors will send the results of the audit to the facility. They'll send them written notice of the results, at which point the facilities have notice of the deficiencies that the department found. And then they have 30 days to submit a written response. And that's their opportunity to be heard, to explain why they think that the documentation that they have been maintaining in their record that supports the submissions that they made to the department that informed their rate setting. They have the opportunity to challenge those audit findings and explain why their documentation was sufficient. How long does this audit take? I'm sorry. How long does this audit take? Is it one day? Or is it busy? The allegations in the – with respect to the three audits, it's a multi-day process. And with respect to the three audits in the – alleged in the complaint, the allegations in the complaint are that they appear to be like a one- to two-week audit process. This wasn't a one-day process where they had to find everything at once. They're given a list of the patients for which the auditors are going to be checking the documentation, and they then provide the documentation. And they're aware throughout the process, even before an onsite audit, they're aware that they're responsible for maintaining the documentation supporting the MDS data that they submitted to the system. The regulations require them to maintain complete and accurate records supporting the MDS data that they submit. Could you – counsel, could you please use words rather than initialisms? We are generalists. You may know what they mean, but we don't. My apologies. The MDS data is the minimum data submission – minimum data submission for – it's the data that they – It sounds like bureaucraties, but words are, in any event, better than letters. My apologies, Your Honor. It's the information regarding the patients under their care, what kind of – what conditions those patients have, what services they're – the facility is providing to them, such as whether they have a particular disease that requires treatment, whether they have a particular, you know, mobility issues or need certain therapies or whatever, what those services are when they're being provided. It's basically information about all of the patients, all of the Medicaid-eligible patients in their facility. Is the rate for the facility for – what is it, an average of all of the – I'll call them patients or occupants of the facility? Because there must be a lot of variations about what someone's needs are in far as setting up a rate. So, the facility submits the information regarding their patients, and then from that information, the patients are classified into what are called resource utilization group categories, and these are – it's a set of 48 categories that the patients fall into, and I think the way the rate is set is – and this is just the nursing component of the rate, but when the patients are classified and then sort of aggregated into one – sort of aggregated, they call it a case mix, and then the rate is determined based on sort of the level of care of the entire case mix. Yeah, well, there's not 48 rates, I'm sure. No, there's one. No. Yeah, right. They come up with a composite rate, and I don't know the actual calculations that go into that, but it's based on the amount of care, like each patient and the amount of care that they need that's been aggregated and translated into one nursing care rate, one per day nursing care rate for the facility. What your opponent is complaining about is that rate was lowered at some point, and obviously that has a pretty big financial impact on the facility, and people who run it. But you've answered my question, so thank you. In the appeal process that's provided under the Illinois Code, could the providers argue that the recalculation is improper because the regulatory procedures of notification of deficiencies weren't followed? In other words, could the providers have raised the claim of procedural irregularity through the appeal process? They certainly could have raised it to preserve it, because to the extent that they're arguing that these auditors of these particular facilities did not comply with the regulations, they would also, in order to state a due process claim, have to allege that they have no available state remedy, that the state does not provide a remedy. But in fact, if they were dissatisfied with the way that the audit was conducted and felt that it didn't comply, that these auditors did not comply with the state regulations, they could have sought judicial review of the administrative decision through a state common law certiorari proceeding. So the answer to your question is yes, it could have been raised in a state process. And to the extent that they're arguing that the regulations themselves provide insufficient process, the procedures, the additional procedures that they appear to be asking for are an adversarial hearing and the right to submit additional documentation during the appeal process. But due process does not require either of those components. Due process under Matthew C. Eldridge requires notice and an opportunity to be heard. And they had both notice of the audit results before their rate was changed and an opportunity to present written submissions challenging the auditor's finding. And that meets the requirements of due process. Moreover, the additional regulations that are the additional procedures that they request wouldn't substantially reduce the risk of erroneous deprivation. As I noted, the information that the information that they input into the system regarding their patients are records that they are required to maintain. And so there wouldn't be a significant benefit to giving them additional opportunities after the audit is conducted to provide additional documentation. And that might raise broad concerns for the department that additional documentation could be supplemented after the audit process. And it would create, and the procedures that they require would create an administrative burden on the state. The state has an interest in auditing Medicaid providers and managing the costs of the state program and requiring them with respect to every audit to offer an administrative hearing rather than the written procedures would be a significant burden. Their claim also fails for the additional reason that they have not established a protected property interest here. I'm glad you got around to that. Explain that. You said that the regulations don't establish a protected property interest in the Medicaid reimbursement rates. I think that's your argument. So explain that. Okay. In order to have a protected property interest has to be a legitimate claim of entitlement, and it has to arise from positive law, whether that be a contract, state law, or federal law. And here, there is no provision that gives them a legitimate claim of entitlement to the reimbursement rates that they seek. The way that reimbursement rates are calculated is expressly set forth in the Illinois regulations, which were approved by the federal agency. And the regulations provide that a rate is set based on the data submission that the facility makes, based solely on the data submission that the facility makes, but that that rate is subject to change pursuant to the audit process. And, in fact, the regulations expressly state that the rate is subject to change. So Illinois law does not provide any legitimate claim. Counsel, I'm puzzled by why you put the property right claim that way. The plaintiffs don't articulate their claim that way. They say their property right is the right to be paid for services rendered at some rate that is not picked out of a hat. Equivalently, one could say that the right is a right to be paid at the legally correct rate. And isn't that a right that's guaranteed by statute and regulation? But it's defined by the actual provision. I wish you would answer my question. It's a yes or no, and then you can explain your answer. Right? If you address the question I ask, then you can explain your answer. There would be a right to be paid, but the right to be paid is defined by the regulation, by the applicable state law and regulation. And here, I hope that answers your question. No, it doesn't. Go back to the beginning of the Supreme Court's modern property right cases. It's Roth against Board of Regents way back now 40 years ago. Somebody says, a professor says, I have a right to tenure at this university. And the Supreme Court says, that's right. If your right is contingent on particular facts, then you have such a right. Your argument was, I think, amounts to saying the Supreme Court should have decided Roth the other way. It should have said something like, well, no professor is guaranteed that he will get tenure if he isn't a good scholar and teacher. And therefore, no one has a property right. But that's not the way the Supreme Court handled Roth or, for that matter, the cases since. So why should one ask the question, what is the right rate, rather than are they guaranteed a legal rate? Their property interest in a rate is contingent upon the rate setting procedures is contingent upon providing documentation that supports the information that they submitted to calculate the rate. And so I don't think they have a property interest. Because their right to repayment is contingent upon the data that they're submitting, I don't think they have a property interest in the rate that they're seeking to obtain. So you think the Supreme Court made a mistake in Roth that it should have said, well, if you're not a good enough scholar, you're not going to be kept on. Therefore, you don't have a property right. That is not, in fact, what they held. No, I certainly wouldn't disagree with the Supreme Court. But what they seem to be alleging, what they seem to be seeking is, what they seem to be alleging is a property interest in the portion of their rate that was unverified by the data submission. And because that portion is not supported, because the statutes, the regulations don't give them a property interest in the rate that is subject to the audit procedures, we would submit that they don't have a property interest in that rate. I see that my time is up, so if there are no further questions, we would ask that you affirm. Judge Rovner, you and Judge Mannion tried to ask a question simultaneously once, and you yielded. Do you have anything you want to pursue at the moment? No, but thank you so much for that opportunity. Okay. Thank you very much, Ms. Hanson. Ms. Watt, anything further? Your Honor, I just want to clarify, again, as I've said, the allegations in the complaint are to be taken as true on a motion to dismiss. This isn't on a motion for summary judgment. The record does not show that the facilities actually did receive notice of the missing documentation. The department wants to tell you they received the notice, but the allegation is that they didn't. And, again, there is sworn testimony in the related case that the facilities, in fact, did not receive that notice. Your Honor, I would ask that respectfully that the court vacate the order dismissing this claim and allow this case to finally be heard on the merits. If you have any further questions, I'd be happy to address them. Seeing none, the case is taken under review.